UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| LEE VERNON WARREN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 1:11CV0054 SNLJ |
| | ) |
| TIMOTHY SEABAUGH, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM**

This matter is before the Court on defendant Timothy Seabaugh's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (#16), plaintiff's Motions for Leave to File an Amended Complaint (#24, 27), and plaintiff's Motion for a Temporary Restraining Order (#28). Each motion will be discussed in turn.

**I.    Defendant's Motion to Dismiss (#16)**

Plaintiff, proceeding pro se, is an inmate incarcerated at Southeast Correctional Center in Charleston, Missouri. Plaintiff brings this action under 42 U.S.C. § 1983 for violations of the First Amendment to the United States Constitution. Plaintiff seeks monetary, injunctive, and declarative relief.

As to defendant Timothy Seabaugh — the only remaining defendant in this case — plaintiff alleges that Seabaugh violated his freedom of association rights when Seabaugh ordered him to remove his name from a prisoner pen-pal website. Plaintiff brings his claim against Defendant Seabaugh in his official and individual capacities.

1

### A. Plaintiff's Allegations

Plaintiff alleges that defendant Seabaugh told him that if plaintiff did not remove his name and information from a "pen pals behind bars" website within thirty days, that defendant would issue a conduct violation to plaintiff and ensure plaintiff was placed in Administrative Segregation until plaintiff's name was removed. Plaintiff also indicates that defendant impermissibly opened plaintiff's mail (apparently relating to the pen pal website). Plaintiff states that he wrote a letter to the pen pal website requesting that his name be removed, with the result that "any relationship which [plaintiff] had form[ed] between himself and [his apparent pen pal] is irretrievably-broken and cannot possibly be repaired due to Mr. Timothy Seabaugh's involvement."

Plaintiff has sued defendant Seabaugh in his official and individual capacities.

### B. Motion to Dismiss Standard

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint so as to eliminate those actions "which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (quoting *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)). A complaint must be dismissed for failure to state a claim if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 560 (2007) (abrogating the traditional "no set of facts" standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that

a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal quotations omitted).

When determining the facial plausibility of a claim, the Court must "accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Cole v. Homier Dist. Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 129 S.Ct. at 1949. "Where the allegations show on the face of the complaint there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is appropriate." *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008).

With these principles in mind, the Court turns to the merits of the motion.

**B. Discussion**

Defendant contends that plaintiff has failed to state a claim for which relief can be granted. First, as to plaintiff's claims against defendant in his official capacity, the Eleventh Amendment bars claims against the State of Missouri and its agencies in Federal Court. *Quern v. Jordan*, 440 U.S. 332, 337 (1979); *Murphy v. State of Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997). Similarly, a suit against state officials in their official rather than individual capacities is again an impermissible suit against a state. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).

Next, the Court turns to plaintiff's claims against defendant in his individual capacity. Plaintiff essentially claims that his First Amendment right to free association was violated when defendant allegedly required him to remove his name from a website that apparently establishes pen pal relationships between prisoners and people in the general community. Plaintiff appears

3

to allege that he was in fact in a pen pal relationship that was somehow terminated as a result of his removal from the website. Plaintiff therefore concludes that defendant violated his First Amendment right to free association.

"[F]reedom of association is among the rights least compatible with incarceration. Some curtailment of that freedom must be expected in the prison context." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003). In a claim alleging a violation of the freedom of association, an inmate plaintiff must allege specific facts indicating that the denial of freedom of association rights involved an "atypical and significant hardship … in relation to the ordinary incidents of prison life." *Knox v. Kempker*, No. 4:06CV1823, 2007 WL 570523, at * 4 (E.D. Mo. Feb. 16, 2007) (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). Plaintiff correctly points out that he has a Constitutional interest in sending and receiving mail, citing to *Procunier v. Martinez*, 416 U.S. 396 (1974). However, the Supreme Court also observed that "legitimate governmental interest in the order and security of penal institutions justifies the imposition of certain restraints on inmate correspondence." *Id.* at 412-13. In his complaint, plaintiff alleges only that the removal of his name from the website resulted in the termination of his "healthy-mail-relationship" with another person. Furthermore, plaintiff does not allege that he was actually restrained from corresponding with or receiving correspondence from anyone; rather, his name and contact information were simply removed from a website.[1] Plaintiff has failed to allege specific facts indicating how the termination of this "healthy-mail-relationship" is an atypical and significant hardship in relation to the ordinary incidents of prison life. Indeed, other courts have held that far greater hardships

---

[1] Plaintiff's memorandum in opposition discusses the "policy" that apparently prompted defendant to request that plaintiff remove his name, but the fact or details of such "policy" were not included in the complaint, and thus it is not relevant to the Court's consideration of the Motion to Dismiss.

4

than removal of a prisoner's name from a pen pal website fail to meet the "atypical and significant hardship" standard. *See Wycuff v. Nichols*, 94 F.3d 1187 (8th Cir. 1996) (holding that 10 days in disciplinary detention and 100 days in maximum security cell was not an atypical and significant hardship); *Driscoll v. Youngman*, 124 F.3d 207 (8th Cir. 1997) (holding that 135 days in disciplinary segregation and administrative segregation was not an atypical and significant hardship); *Hemphill v. Delo*, 124 F.3d 208 (8th Cir. 1997) (holding that 4 days locked in housing unit, 30 days in disciplinary segregation, and 290 days in administrative segregation was not an atypical and significant hardship); *Knox v. Kempker*, 2007 WL 570523, at * 4 (dismissing prisoner's free association claim for being denied visits with son during time spent in administrative segregation). As such, plaintiff has failed to state a claim for which relief can be granted.

Plaintiff's complaint also alleges that defendant opened his mail. Plaintiff does not allege that the mail contained attorney-client privileged information. Non-privileged inmate mail is clearly not immune to inspection, thus such inspections [of non-privileged mail] cannot give rise to civil rights violations." *Jensen v. Klecker*, 648 F.2d 1179, 1182 (8th Cir.1981).

Finally, the Court notes that plaintiff alleges in his response memorandum that various prison officials have found him guilty of a conduct violation, transferred him to another institution, and "locked up" his legal papers. Plaintiff suggests that these incidents have been intended to make him "lose interest" in prosecuting his case. However, plaintiff does not allege that defendant Seabaugh (the only remaining defendant in this case) had any role in these alleged actions. Plaintiff also states in his response that defendant issued plaintiff a false conduct violation, supposedly in retaliation for plaintiff's filing his amended complaint. However, retaliation claims are not the subject of plaintiff's complaint and, even if plaintiff did allege such

5

a retaliation claim against defendant Seabaugh, "merely alleging that an act was retaliatory is insufficient." *Meuir v. Greene County Jail Employees*, 487 F.3d 1115, 1119 (8th Cir. 2007) (listing factors necessary to make a prima facie showing of retaliatory discipline).

The Court agrees that plaintiff has failed to state a claim, and his claims against defendant Seabaugh will be dismissed.

## II.    Plaintiff's Motion for Leave to File Amended Complaint (#24, 27)

Plaintiff filed a Motion for Leave to File an Amended Complaint along with an attached proposed complaint (#24) and, nearly a month later, a "Third Amended Complaint" (#27). The Court will assume that the Third Amended Complaint supersedes the Second, as the Third appears to include and add to the allegations in the Second. The proposed amended complaint is difficult to understand; however, the Court gleaned from Document 27 that the plaintiff appears to seek to add the following information to his complaint:

(1) Plaintiff was transferred to Missouri Eastern Diagnostic & Reception Center, where he was "deprived of all items, services, which he was enjoying as an inmate in general population which is truly an atypical-hardship upon plaintiff mainly because [plaintiff] is suffering from 'heart-trouble' 'foot problems' & 'leg problems' 'high-blood-pressure-problems' and kidney failure," (2) defendant Seabaugh made a false report that plaintiff had been "checking up" on defendant's family on the internet, which resulted in punishment, (3) defendant Seabaugh ransacked plaintiff's cell, (4) ants crawled all over plaintiff in his cell as he slept and ate his eardrum, (5) conditions in administrative segregation are poor, (6) the law librarian, Melba Miller, wrote a conduct violation because she was tired of seeing him in the library, and (7) these other violations occurred because plaintiff was attempting to help other inmates with legal claims.

At page 10 of his Third Amended Complaint, the plaintiff appears to segue into a memorandum of law, which refers to survival of a summary judgment motion and nonsensically repeats allegations already made in the "Third Amended Complaint." It is not clear whom, if anyone, plaintiff seeks to add as defendants in this case.

The Court finds plaintiff's proposed amended complaint to be utterly confusing. However, the Court will address plaintiff's proposal to the extent possible. To the extent that plaintiff is seeking leave to amend his complaint to include a First Amendment retaliation charge against defendant Seabaugh, as stated above, a prisoner's rights are violated if prison officials impose a disciplinary sanction against a prisoner in retaliation for the prisoner's exercise of his constitutional right. *Meuir*, 487 F.3d at 1119. A claim for retaliatory discipline requires an inmate to show that but for a retaliatory motive, the prisoner would not have received the discipline. *Haynes v. Stephenson*, 588 F.3d 1152, 1156 (8th Cir. 2009). Plaintiff has provided a disciplinary action report and a conduct violation report as attachments to his Motion for Leave; however, plaintiff's allegations and his attachments fail to show that but for a retaliatory motive, plaintiff would not have received the discipline. Two disciplinary actions appear to be at issue: First, plaintiff received a disciplinary action report on June 7, 2011 for stating that he had been checking up on defendant Seabaugh and his family and for providing personal information which led prison officials to believe that plaintiff actually had been doing as he claimed. Second, plaintiff received a conduct violation report on August 31, 2011 for being loud and disruptive at the law computer station. Plaintiff received this conduct violation from Melba Miller, Librarian at Eastern Reception and Diagnostic Correctional Center, where plaintiff is now incarcerated. Neither plaintiff's written allegations nor his attachments demonstrate that but for a retaliatory

motive, plaintiff would not have received the discipline. In fact, the attachments indicate that plaintiff threatened defendant Seabaugh during the hearing on the conduct violation.

Next, to the extent that plaintiff is seeking leave to amend his Complaint to include a challenge to conditions of confinement, a successful challenge to conditions of confinement requires a showing that prison officials have been "deliberately indifferent to an inmate's health or safety…". *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The Supreme Court has held "that a liberty interest protected by the Due Process Clause can be created where a restraint falls short of direct implication of the Due Process Clause, but still 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Plaintiff was sentenced to twenty days in disciplinary segregation confinement Confinement in disciplinary segregation confinement for twenty days is not an atypical and significant hardship in relation to the ordinary incidents of prison life. *Sandin*, 515 U.S. at 484; *see also Wycuff*, 94 F.3d 1187 (holding that 10 days in disciplinary detention and 100 days in maximum security cell was not an atypical and significant hardship); *Driscoll*, 124 F.3d 207 (holding that 135 days in disciplinary segregation and administrative segregation was not an atypical and significant hardship); *Hemphill*, 124 F.3d 208 (holding that 4 days locked in housing unit, 30 days in disciplinary segregation, and 290 days in administrative segregation was not an atypical and significant hardship). Although plaintiff claims he suffered injuries from an ant infestation in his cell, that allegedly occurred while he slept, and plaintiff does not indicate that anyone was deliberately indifferent to any serious medical need.

Finally, even if plaintiff properly pleaded a conditions of confinement claim, this Court is mindful that it should carefully consider joinder of defendants and claims in prisoner cases. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (district court should question joinder of

defendants and claims in prisoner cases). With the exception of plaintiff's purported retaliation claim against defendant Seabaugh, none of plaintiff's claims arise out of the same transaction or occurrence or are against defendant Seabaugh, so plaintiff's myriad unrelated claims (to the extent he seeks to make them) against unknown parties must be made in separately-filed suits. *See id.*; Fed. R. Civ. P. 18(a), 20.

The remainder of plaintiff's filing is repetitious and largely unintelligible. Plaintiff's motion for leave to amend will be denied.

## III.     Motion for Temporary Restraining Order (#28)

Plaintiff filed a motion for a temporary restraining order (#28) on September 9, 2011, seeking to restrain defendant Seabaugh and non-party Melba Miller from writing malicious conduct violation reports in retaliation for plaintiff's filing this lawsuit. Plaintiff requests that the Court issue an order to show cause why such an order should not issue. To determine whether such preliminary injunctive relief is warranted, the Court must balance threat of irreparable harm to the movant, the potential harm to nonmoving party should injunction issue, the likelihood of success on merits, and the public interest. *Dataphase Sys. v. CL Sys.*, 640 F.2d 109, 113-14 (8th Cir. 1981) (*en banc*). Plaintiff's motion and attached affidavits do not present any immediate threat of irreparable harm, nor could there be any, as defendant Seabaugh is employed at Southeast Correctional Center and plaintiff is housed at Eastern Reception and Diagnostic Correctional Center, 125 miles away. Furthermore, Melba Miller is not a party to this lawsuit. In addition, plaintiff has not made a case that he will have a likelihood of success on the merits as to these "claims" — in fact, this Court has already determined that plaintiff has failed to state a claim for retaliation; therefore, plaintiff's motion will be denied.

## IV. Conclusion

Plaintiff's remaining claim against defendant Seabaugh will be dismissed. Plaintiff's request for leave to amend his complaint and his request for a temporary restraining order will be denied.

Dated this __8th__ day of November, 2011.

_____
UNITED STATES DISTRICT JUDGE